## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**FRANCISCO S.[1]**

        **Plaintiff,**

                                **Case No. 2:22-cv-1316**

    **v.**                               **Magistrate Judge Norah McCann King**

**LELAND DUDEK[2],**
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Francisco S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On October 20, 2015, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since August 1, 2014.[3] R. 420–32. The applications were denied initially and upon reconsideration. R. 279–84, 309–15. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 285–86. ALJ Peter Lee held a hearing on July 9, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 85–132. In a decision dated October 23, 2018 ("the 2018 decision"), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. R. 270.[4] The Appeals Council vacated that decision and remanded the matter for further proceedings, directing the ALJ to "take any further action needed to complete the administrative record and issue a new decision." R. 270–73 (directing specifically, *inter alia*, that the ALJ "[e]valuate" and give "[a]dditional consideration" to the third-party statement of Plaintiff's brother, Exhibit 9E, R. 527–34).

On remand, ALJ Lee held another hearing on March 3, 2021, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 133–98. In a decision dated March 19, 2021,[5] the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 29, 2016, Plaintiff's amended alleged disability onset date, through the date of the decision. R. 28–47. That decision became final when the Appeals Council declined review on January 20, 2022. R. 1–6. Plaintiff timely filed

---

[3] Plaintiff later amended his alleged disability onset date to September 29, 2016. R. 28, 139–40.
[4] A copy of the 2018 decision does not appear in the record.
[5] The ALJ issued an initial decision dated March 16, 2021, R. 58–77, but subsequently issued an amended decision on March 19, 2021. R. 28–47. Although not identified by the parties, the Court understands that the only difference between these two decisions is language added to the amended decision addressing "a borderline age situation[.]" *Compare* R. 46 *with* R. 76. This Court cites to only the amended decision dated March 19, 2021.

this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 17, 2022, Plaintiff consented

to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[6] On May 15, 2023, the case was

reassigned to the undersigned. ECF No. 24. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

---

[6]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

5

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not

have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act for purposes of disability insurance benefits through June 30, 2018. R. 30. He was 50 years old on September 29, 2016, his amended alleged disability onset date. R. 46. At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 30.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease with radiculopathy; carpal tunnel syndrome; osteoarthritis of the knees; obesity; depressive disorder; obsessive compulsive disorder ("OCD"); generalized anxiety disorder; and posttraumatic stress disorder ("PTSD"). *Id*. The ALJ also found that the following impairments were not severe: tinnitus; vertigo; hypertension; hypertensive heart disease; diabetes; hyperlipidemia; and sleep apnea. R. 31.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 31–34.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 34–46. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an order clerk. R. 45–46.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an assembler (small parts), a marker, and an office worker—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 46–47. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 29, 2016, his amended alleged disability onset date, through the date of the decision. R. 46–47.

Plaintiff disagrees with the ALJ's findings at steps two, three, and four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 12. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected

8

consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 28.

IV.    SUMMARY OF RELEVANT RECORD EVIDENCE

On October 29, 2015, Plaintiff's mother completed a third-party statement, R. 498–505, representing, *inter alia*, that Plaintiff resides with her and spends his days "paising [sic] around the house[;] Looking out his bedroom and kitchen window[;]; watch[ing] TV for a little while[;] Eat[ing] lunch & dinner[;] shower[ing] and goes to bed." R. 498. Plaintiff's illnesses and conditions render him "unable to sleep, consentrate [sic], Interact with others" and his sleep is affected by these illnesses and conditions, causing him to "toss[] and turn[] do [sic] to tinnitus ringing in both ears[.]" R. 499. According to his mother, Plaintiff had no problems with his personal care but needed reminders for doctors' appointments and taking medicine. R. 499–500. Plaintiff could prepare daily meals of sandwiches and cereal, but did not otherwise cook because he is "afraid of fire[.]" R. 500. He was able to drive, but he did not go out alone because he was "nervous, panic[.]" R. 501. Plaintiff could pay bills, count change, handle a savings account, and use a checkbook/money order. *Id*. Ms. Vera stated that Plaintiff watched TV but advised that he was not able to do it well. R. 502. In response to whether there were any changes in Plaintiff's activities since the onset of his illnesses or conditions, his mother stated: "very jumpy[;] Gets upset[;] doesn't like to be alone[.]" *Id*. Plaintiff attended church and doctors' appointments, but he needed someone to accompany him and he otherwise did not spend time with others. *Id*. Asked whether Plaintiff had problems getting along with family, friends, neighbors, or others, his mother indicated "Yes[,]" and explained that Plaintiff does not "like to hear people issues[.]" R. 503. Plaintiff "[d]oesn't like to travel alone or family get together[s.]" *Id*. According to his mother, Plaintiff's impairments or conditions affect his hearing, memory, completing tasks,

concentration, understanding, following instructions, and getting along with others:

> Hearing: Makes it hard do [sic] to tinnitus
> Memory: has to be reminded of doctors['] appointments and to take medication
> Completing tasks: Gets upset quickly inpasient [sic] and walks away[.]

*Id*. Further, Plaintiff was "not to[o] good" at following written instructions, and could "some

what" [sic] follow spoken instructions. *Id*. Although Plaintiff had never been fired or laid off

from a job because of problems getting along with other people, his mother indicated that

Plaintiff did not get along with authority figures, such as police, bosses, landlords, or teachers:

"not at all[;] short-tempered[.]" R. 504. According to his mother, Plaintiff is "unable to sleep[;]

[d]on't like to be alone[;] scare[d;] nervous":

> Consentration [sic]: Not focus, Day dreaming
> Understanding: have to repeat things more than once
> Following instruction: Not good at it[;] has a hard time doing [illegible]
> Getting Along With Others: Does not like people who stare at him and laugh to
> [sic] loud[;] has no patience.

R. 504-05.

On March 14, 2016, Plaintiff's brother completed a third-party statement, R.527–34,

indicating, *inter alia*, that Plaintiff's illnesses or conditions render Plaintiff "unable to follow

instruction, nervious [sic], too hyper, cant [sic] focus, very jumpy, don't finish what he starts." R.

527. Plaintiff's daily activities were described as follows: "paising [sic] around the house, don't

sit for very long[,] looking out the window and back door[,] showers[,] eats and goes to sleep."

R. 528. Asked what activities Plaintiff could do before his illnesses or conditions that he cannot

do now, Mr. Santino responded, "sleep well[;] consentrate [sic], interact with other[s;] drive by

himself[;] stay home alone[.]" *Id*. Plaintiff's illnesses and conditions had the following effects:

"Tossing and Turning, ringing on both ears, very anxious, nervous and worries[.]" *Id*. Plaintiff

needed reminders for doctors' appointments and to take medication at the right time. R. 529. He

could prepare daily meals of sandwiches and cereal, but did not otherwise cook because he was "afraid of fire, can't follow recipes['] instruction[.]" *Id*. Plaintiff could drive a car, but does not go out alone because he is "nervous, panic, afraid[][.]" R. 530. Plaintiff could pay bills, count change, handle a savings account, and use a checkbook/money orders. *Id*. According to his brother, Plaintiff watches television and does "some reading" for approximately two to three hours, but "does not relax" while doing so. R. 531. Since the onset of his illnesses or conditions, Plaintiff is "very jumpy, very nervous [sic], doesn't like to be alone." *Id*. Plaintiff attended church and doctors' appointments, including mental health group meetings, but needed someone to accompany him and did not spend time with others. *Id*. According to his brother, Plaintiff also had problems getting along with family, friends, neighbors, or others: Plaintiff does not "like to hear Peoples['] Issues" and "[d]oesn't like to associate[.]" R. 532. Plaintiff's impairments or conditions affect his abilities to lift, squat, bend, stand, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. *Id*. Plaintiff was "not to[o] good" at following written instructions and could "some what" [sic] follow spoken instructions. *Id*. Although Plaintiff had never been fired or laid off from a job because of problems getting along with other people, Plaintiff did not get along with authority figures such as police, bosses, landlords, or teachers: "not at all[;] short-tempered[;] nervous [sic] and anxious[.]" R. 533. According to his brother, Plaintiff is "nervous [sic], don't' like to stay alone[,] yells a lot[,] doesn't have patients [sic], anxious, mood swings, afraid":

> [Plaintiff has] [p]aine [sic] in both kneeds [sic], paine [sic] in lower back, shorth [sic] of breath going upstairs steps, lifting anything heavier than 20 lbs.[,] bending do [sic] to lower back paine [sic], walking for long period of time[,] need to stop catch breath."

R. 533-34.

11

## V.    DISCUSSION

At step four of the sequential evaluation process, the ALJ considered, *inter alia*, the third-party statements from Plaintiff's mother and brother but assigned those statements "[l]imited weight":

> Limited weight is assigned to the third party function reports from the claimant's mother and brother at Exhibits 4E and 9E. I note the claimant's mother and brother have no apparent professional training to assess the claimant's functional capacity; and are sympathetic to the claimant (20 CFR 404.1513(a)(4) and 416.913(a)(4)). Nevertheless, *I take these third party statements under strong consideration when assessing the claimant's allegations of having disabling impairments*.

R. 45 (emphasis added).

Plaintiff argues that the ALJ erred in discounting these third-party statements, leading to errors at steps two, three, and four of the sequential evaluation. *Plaintiff's Moving Brief*, ECF No. 12, pp. 28–29 n.15. Plaintiff specifically contends that the ALJ should not have discounted these statements simply because Plaintiff's mother and brother are not medical professionals or because they may have had some motivation to support their relative's claim. *Id*. (citations omitted). The Acting Commissioner offers no response to this argument nor does he otherwise address the third-party statements of Plaintiff's mother and brother. *See generally Defendant's Brief*, ECF No. 28. For the reasons that follow, the Court agrees that this issue requires remand, but for reasons different than those raised by Plaintiff. *See West v. Kijakazi*, No. 3:21-CV-01350, 2023 WL 2742746, at *4 n.3 (M.D. Pa. Mar. 31, 2023) ("A reviewing court may *sua sponte* address issues in social security cases.") (quoting *Sparaney v. Kijakazi*, No. 3:20-cv-02054, 2022 WL 969619, at *9 n.9 (M.D. Pa. Mar. 30, 2022)); *Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.")

(citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at

*3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but

finds that remand is warranted on grounds not raised by the parties.").

In the present case, the ALJ assigned only "[l]imited weight" to the third-party statements

of Plaintiff's mother and brother because they "have no professional training" and are

"sympathetic to the claimant[.]" R. 45 (citing Exhibits 4E and 9E). However, lack of medical

training and potential bias do not sufficiently explain discounting third-party lay evidence. *See*

*Quinn v. Kizakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *7 (M.D. Pa. Jan. 18, 2022)

("[T]he ALJ's reasoning for finding [the plaintiff's wife's] statement less than persuasive

because she is not medically trained, or a disinterested party is improper" where her "statements

were not intended to serve as a medical opinion and were offered to show her personal

observations of her husband"; and "an ALJ cannot discount a lay witness's report solely because

he or she is not a disinterested witness") (citations omitted); *A.E. v. Comm'r of Soc. Sec.*, No. CV

20-11492, 2021 WL 5905704, at *7 (D.N.J. Dec. 14, 2021) ("If it were the case that lay witness

statements must be partially rejected purely on the basis that they are not medical evidence, then

that would be true of all lay witness statements, and they would all be assigned partial weight as

a rule. But this is not the case."); *Dougherty v. Saul*, No. 3:20-CV-00504, 2021 WL 3077504, at

*6 (M.D. Pa. July 21, 2021) ("It was improper for the ALJ to discount [the plaintiff's husband's]

non-medical opinion on grounds that he is not a medical expert. . . . Remand is necessary for

consideration of this evidence and in what respect it is or is not consistent with the medical

record."); *Vaughn v. Berryhill*, No. CV 17-5426, 2019 WL 13222277, at *5 (D.N.J. June 10,

2019) ("Further, it is unreasonable to reject a third-party functional report from a family member

simply for the reason that it is a third-party functional report from a family member. They are all

lay opinions, and – as such – none of them are based on medical examinations. If such reports could be rejected out of hand on this basis, the Agency would not solicit them on official agency forms.").

It is true that the ALJ also stated that, notwithstanding the limited weight that he assigned to these statements, he took "these third party statements under strong consideration when assessing the claimant's allegations of having disabling impairments." R. 45. Specifically, the ALJ referred to the brother's statement, Exhibit 9E, R. 527–34, at step three of the sequential evaluation, as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant alleged that he had difficulty remembering generally, following instructions, completing tasks, going to doctor's appointments without reminders and taking medications without reminders. However, *the claimant also stated* that he could perform simple maintenance, prepare meals, pay bills, drive and read. (*Exhibits 9E* and 10E[7]) In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital and respond to questions from medical providers (Exhibits 2F, 3F, 4F, 6F, 7F, 8F and 9F). On November 19, 2015, the claimant submitted to a consultative examination with psychologist Kim Arrington, Psy.D. (Exhibit 2F). Dr. Arrington recorded that the claimant's recent and remote memory skills were impaired possibly due to depression and limited cognitive functioning as he was able to recall three out of three objects immediately and one out of three objects after five minutes and was able to repeat hack four digits forward and two digits backward.

---

[7] Exhibit 10E, R. 535–41, is Plaintiff's function report.

14

In interacting with others, the claimant has a moderate limitation. Here, *the claimant alleged* that he had difficulty engaging in social activities, getting along with others, dealing appropriately with authority and going out by himself (*Exhibits 9E* and 10E). However, *according to his statements, the claimant was also able to get along with family,* shop, *spend time with family*, attend church, *deal appropriately with authority* and live with his mom (Exhibits 9E, 10E, 4F and 11F). Finally, the medical evidence showed that the claimant had a good rapport with providers, was described as calm, pleasant and cooperative, had good interactions with non-medical staff. and appeared comfortable during appointments (Exhibits 4F, 6F, 7F and 11F).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant contended that he had limitations in concentrating generally, focusing generally, following instructions, completing tasks, a voiding distractions and maintaining a regular work schedule. On the other hand, *the claimant* said that he was also able to drive, prepare meals, watch TV, read, manage funds and attend church. (*Exhibits 9E* and 10E) At consultative examination, Dr. Arrington recorded that the claimant's attention and concentration were impaired possibly due to limited cognitive functioning as he was able to do counting, unable to do any simple calculations, was able to spell his first name forward, hut unable to spell his name backward (Exhibit 2F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant asserted that he has difficulties handling change, managing his mood and getting along with others. That said, *the claimant also stated* that he is able to handle self-care and personal hygiene and *get along with* his mom and *at least one co-worker*. (*Exhibits 9E* and 10E) Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect and no problems with temper control (Exhibits 4F and 11F).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 32–33 (emphases added). In citing Exhibit 9E, the ALJ mistakenly represented that it was Plaintiff—rather than Plaintiff's brother—who provided the information contained in that exhibit. The ALJ also mischaracterized the brother's statement, which did not. for example, indicate that Plaintiff could "get along with family" or "deal appropriately with authority[.]" R. 33. *See* R. 532 (indicating that Plaintiff had problems getting along with family, friends, neighbors, and others), 533 (denying that Plaintiff got along "at all" with authority figures).

15

Although the ALJ referred to the brother's statement for the finding that Plaintiff got along with "at least one co-worker[,]" R. 33, that representation does not in fact appear in the brother's statement. *See generally* R. 527–34.[8] This mischaracterization on the part of the ALJ at step three of the sequential evaluation may also have infected the ALJ's RFC determination at step four, which limited Plaintiff to occasional contact with supervisors, co-workers and the public. R. 34.

Moreover, despite the representation that he took both the mother's and brother's statements under "strong consideration when assessing the claimant's allegations of having disabling impairments[,]" R. 45, nowhere in the opinion does the ALJ discuss—or even cite—the mother's statement. Notably, both the mother and the brother agreed that Plaintiff had problems getting along with others, including authority figures, and his mother expressly stated that Plaintiff did not like getting together with even family. R. 503. *See also* R. 505 (stating that Plaintiff "[d]oes not like people who stare at him and laugh to[o] loud[;] has no patience."). Furthermore, the ALJ characterized Plaintiff's difficulty in, *inter alia*, "going out by himself" as Plaintiff's own subjective statements, R.33, and did not, apparently, consider his family members' statements that Plaintiff was unable to go out by himself, travel alone, or even stay home alone. R. 501–04, 528, 530–31, 533.

In sum, although the ALJ represented that he took these third-party statements "under strong consideration when assessing the claimant's allegations of having disabling impairments[,]" R. 45, he in fact mischaracterized the brother's statement and apparently wholly failed to actually consider the mother's statement. Under these circumstances, the Court cannot

---

[8] Nor can the Court locate such a representation in Plaintiff's function report, Exhibit 10E, R. 535–41.

16

conclude that substantial evidence supports the ALJ's findings at steps three and four. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at \*6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Worsley v. Colvin*, No. CV 15-1635, 2017 WL 1179009, at \*3 (W.D. Pa. Mar. 30, 2017) ("Specifically, because the Court finds that the ALJ mischaracterized or misconstrued certain facts in the record in assessing Plaintiff's credibility and in formulating her RFC, the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration."); *cf. Coniglio v. Colvin*, No. CV 15-40, 2016 WL 4385870, at \*9 (E.D. Pa. July 26, 2016), *report and recommendation adopted*, No. CV 15-40, 2016 WL 4270334 (E.D. Pa. Aug. 15, 2016) ("However, an analysis based on factual errors and mischaracterizations of the evidence cannot provide substantial evidence to find that a claimant's complaints of pain are not credible."); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at \*2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[9] Moreover, remand is appropriate even if, upon further examination

---

[9] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of these third-party statements, step three, and the RFC determination, the Court does not consider those claims.

of the third-party statements from Plaintiff's mother and brother, the listings at step three, and

the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf.*

*Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J.

Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a

proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at

*4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that

would enable meaningful review, and the Court once more cannot determine what role lay

speculation played in the ALJ's rejection of this detailed functional assessment from Dr.

Marks.").

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Acting Commissioner's decision and

**REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 26, 2025                    *s/Norah McCann King*
                                   NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE